[Civ. No. 846.  First Appellate District.—December 5, 1910.]

## ANTONE SCURICH, Respondent, v. JOHN M. RYAN, Appellant.

TEMPORARY EXCLUSION OF TENANT FOR YEARS FROM A LEASED ORCHARD—DAMAGES—EXCESSIVE VERDICT.—In an action by a tenant for years of a leased orchard, for a temporary exclusion therefrom for the period of two days by the locking of a gate preventing access thereto, under a claim that the terms of the lease had been violated, it is held that a verdict for $750 damages for such temporary eviction was excessive, and not warranted by the evidence.

ID.—ATTORNEY'S FEES NOT ALLOWABLE AS DAMAGES.—Fees paid to an attorney consulted by the tenant are not a proper element of damages for such exclusion of the tenant.

ID.—BURDEN UPON PLAINTIFF TO MAKE SATISFACTORY PROOF OF DAMAGE. The plaintiff, in order to recover damages for such exclusion, must show facts and figures by which his damages may be legally and correctly ascertained. If limbs on the fruit trees were broken during such exclusion, because plaintiff was not allowed to prop them, the number of such limbs, and the value of the fruit so destroyed should be shown. If plaintiff had to haul extra loads of props, the necessity thereof and the expense and cost of hauling them should be shown.

ID.—INSUFFICIENT SUPPORT OF VERDICT.—A verdict cannot be based upon a mere general statement, consisting partly of imagination and partly of opinion, or by evidence of damage of a most general and unsatisfactory character.

ID.—EXCESSIVE VERDICT OVER ACTUAL DAMAGE PROVED NOT REGARDED AS PUNITIVE—MALICE AND OPPRESSION NOT SHOWN.—The excess in the verdict above the actual damage proved cannot be regarded as punitive damages, though the complaint was framed to recover the same, where the act of the defendant was not inherently malicious or oppressive, and no evidence was introduced to show that it was so in fact, and no instruction was asked on that subject, but there is evidence tending to show that plaintiff had neglected the property, and that defendant acted in good faith in what he did.

ID.—CASE LIMITED TO COMPENSATORY DAMAGES.—Although the defendant invaded a right of the plaintiff, since the record fails to show that he acted from any motive of malice or oppression, the case is one for compensatory damages only.

APPEAL from an order of the Superior Court of Santa Cruz County, denying a new trial. Lucas F Smith, Judge.

The facts are stated in the opinion of the court.

A. W. Sans, and Edward J. Kelly, for Appellant.

James A. Hall, for Respondent.

KERRIGAN, J.—This is an appeal from an order denying a motion for a new trial in action for damages for the violation of the covenants of a lease.

The plaintiff leased from the defendant an orchard in Santa Cruz county of about thirteen acres, for a term of four years commencing January 3, 1907, at an annual rental of $750. One of the terms of the lease was that plaintiff was to carefully prune, cultivate, spray and care for said orchard in the manner that orchards are cultivated, sprayed and cared for in the vicinity.

On August 3, 1908, the defendant claiming that plaintiff had broken that covenant of the lease, served a notice on him purporting to terminate the tenancy, and on the next day closed and locked one of the two gates leading to said premises, and for two days excluded plaintiff and his employees from entering the orchard through said gate. Entrance through the other gate, according to the testimony of plain-

tiff, was "impracticable." The plaintiff did not reside on the premises in question.

The jury returned a verdict for the plaintiff for the sum of $750, and judgment was entered accordingly.

The defendant contends that the evidence is insufficient to sustain the verdict of the jury as to the amount of the damages suffered by the plaintiff, and we are of the opinion that this contention should be sustained.

Plaintiff testified that the fruit in the orchard was damaged to the value of $250, and that "for time and labor in hauling props and time lost" he was damaged in the further sum of $250. On cross-examination he testified as follows:

"Q. Now you have placed the damage done you by this gate being locked at $500—$250 for the crop and $250 otherwise? A. I said damage to the crop $250 and $250 expense of hiring an attorney.

"Q. In what way were the apples damaged to the extent of $250? A. I cannot tell exactly. That is what I guessed that he damaged it, $250.

"Q. In what way were they damaged? A. Well, I claim losing time, not allowing boxes and one thing and another to go in there, the gate was locked, and I could not get in to haul them back.

"Q. Did he go to the gate while it was locked with boxes? A. No, I would if the gate was open.

"Q. How was the apple crop damaged, in what manner, you might as well answer that; we will keep on asking it until you do? A. The crop was heavy for the limbs, fall into one another with the weight, it would break the limbs, he would not let me go in and put up these sticks to keep them up so they would not fall on to the other limbs.

"Q. How many limbs were broken while the gate was locked? A. Three or four, but I cannot tell exactly because I did not go all through the orchard.

"Q. Were those large or small limbs? A. About the thickness of my wrist.

"Q. Is that all the damage done to the crop? A. When I put those sticks up it kept the limbs from bruising one another, the apples would not get bruised up.

"Q. Is that all the damage done to the crop? A. That is all.

"Q. What are the items of the other $250 damages? A. For hauling those props twice.

"Q. How much was that? A. I hauled them twice.

"Q. How much was that, how much money did you allow for that? A. Between ten and twenty dollars.

"Q. Each load? A. Yes, sir.

"Q. Do you mean forty dollars altogether for the two loads? A. Yes, sir.

"Q. Do you mean that is the price of the props, or that is what you are charging for the time spent? A. To haul them out to the ranch and leave them on the truck, the hire of the truck. I left them four or five days, everything all combined was forty dollars.

"Q. Any other damages? A. Attorney's fees.

"Q. You are counting attorney's fees in also? A. I went for his advice, I suppose, I don't know.

"Q. Is there anything else besides attorney's fees? A. About five dollars, I was ready to haul them, the gate was locked, expense for loading them, one thing and another about five dollars.

"Q. Did you lose the boxes? A. No, I mean the labor.

"Q. Labor in making them? A. No, loading them up and taking them off the truck.

"Q. Why did you load those on the truck? A. Well, I had the idea of taking the boxes up there, I did not take any out.

"Q. Did you load them up and take them out there? A. No.

"Q. Then you are charging five dollars because your idea was not carried out? Is that it? A. Well, that is what I said.

"Q. Did you say that you made up the boxes to take out there? A. No, sir. I said the boxes were going, you know, to be made up. I had an idea to haul them up there. I did not haul them up there. I think I am that much loser, about five dollars expense by not hauling them out.

"Q. How long was it from the time the gate was opened after being locked until you hauled the boxes out there? . . . A. I don't know, I think it was about ten days."

Another witness testified as follows: "The damage to the crop by reason of the plaintiff being prohibited from attend-

14 Cal. App.—48

ing to it was about $250. At that time the apples needed
special attention in propping and other matters. He was
damaged at least $100 by reason of his hired men not being
allowed to take the props into the orchard by reason of loss
of time for these men. In my opinion, the total damage for
the time the gate was locked and the plaintiff prohibited
from entering was easily $500. I include in this other things
besides injury of crop and loss of time.'' On cross-examina-
tion this witness testified that the damage to the crop was
$350, and that the plaintiff was entitled to $150 as an attor-
ney's fee; but upon being pressed to detail the damages to the
fruit he said that the only thing he knew about was the
breaking of one limb, which was the size of a man's wrist.
As to the hiring of a team for two days, for which the plain-
tiff said forty dollars would be a reasonable charge, this wit-
ness, who was the owner of the team, said that twenty dollars
would be ample.

No evidence was introduced to show how many boxes of
fruit, if any, were lost in the two days that the gate was
locked.

When the defendant took the stand he attempted to justify
his eviction of the plaintiff on the ground that he was not
taking proper care of the orchard and that limbs were break-
ing. To meet this the plaintiff, in rebuttal, and several wit-
nesses in his behalf, testified that the broken limbs were
rotten and could not have been saved even if propped, and that
they were of no value.

The testimony in behalf of plaintiff as to the damage sus-
tained by him was most general and unsatisfactory in char-
acter. But conceding that he is entitled to a judgment, and
leaving out attorney's fees, which are not a proper element
of damages (*Miller* v. *Kehoe,* 107 Cal. 340, [40 Pac. 485];
*Sanger* v. *Ryan,* 122 Cal. 52, [54 Pac. 522]), it must be held
that the verdict is excessive. The plaintiff, in order to re-
cover damages, must show facts and figures by which his
damages may be legally and correctly ascertained. If limbs
on the fruit trees were broken because plaintiff was prevented
from entering the orchard to prop them, it seems that the
number of limbs so broken could have been stated, and an
estimate made of the value of the fruit thus destroyed. If
plaintiff had to haul extra loads of props, it should be shown

why it became necessary to do so, and also the expense and cost of such hauling. A verdict cannot be based upon a mere general statement, consisting partly of imagination and partly of opinion.

It is suggested by plaintiff that any excess in the verdict over the actual damages proven may be regarded as punitive damages. It is true that the complaint was framed to cover damages of this character; but the act of the defendant complained of was not inherently malicious or oppressive, and no evidence was introduced to show that it was so in fact; and as no instruction on the subject of exemplary damages was either requested or given by the court, it would appear that the plaintiff abandoned any theory that he may have entertained that the defendant, in seeking to evict him, was guilty of fraud, oppression or malice. There is an abundance of evidence in the case which, if true, tends to support the defendant's theory that the plaintiff had so neglected the property as to entitle the defendant to cancel the lease and retake possession; and there is nothing in the record inconsistent with the idea that the defendant supposed in good faith that he was acting within his rights. Although the defendant invaded a right of plaintiff, the record failing to show, as it does, that he acted with any motive of malice or oppression, the case is one for compensatory damages only.

The order is reversed and the cause remanded for a new trial.

Cooper, P. J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 2, 1911.